UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>STEVEN GREENLEAF BLODGETT,<br><br>    Defendant. | Case No. 1:24-cr-00199-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This matter is before the Court pending completion of sentencing. On February 4, 2025, the Court began the sentencing hearing for Defendant Steven Blodgett. While addressing objections, and after hearing argument, the Court ruled that additional briefing was necessary to decide whether the two-level enhancement for the use of a firearm applied to Blodgett and whether the two-level reduction for the safety valve could apply to Blodgett. The parties have now timely submitted their supplemental briefs. The court finds that further oral argument on the issues of firearm enhancement and the safety valve is not necessary.

This memorandum decision is the Court's decision on both the firearm enhancement and the safety valve relief. The Court finds under the unique facts of this case, the Defendant is subject to the firearm enhancement and is not entitled to the benefit of safety valve relief. Accordingly, further argument on these two issues is unnecessary and

sentencing can proceed.

## II. BACKGROUND

Defendant is sixty-seven years old. Law enforcement became aware of him in June 2024 when Bingham County detectives received a tip that he was dealing drugs. In July of 2024, law enforcement placed a tracker on Defendant's vehicle. On July 23, 2024, law enforcement conducted a controlled purchase of an ounce of methamphetamine from Defendant. This controlled purchase occurred in Defendant's motorhome located in Pocatello, Idaho. Prior to the controlled purchase, the confidential informant ("CI") told the detectives that he knew Defendant had a handgun in his residence.

On July 25, 2024, the CI told detectives that the Defendant was going to rent a vehicle, drive to Salt Lake City, Utah, and pick up several pounds of methamphetamine. Detectives saw Defendant leave his house, rent a vehicle, make several quick stops, and then begin to drive south towards Salt Lake City. Detectives conducted surveillance in Utah. They saw Defendant meet with two Hispanic females in a parking lot at Walmart in Toole, Utah. Defendant returned to Idaho that same day. A search warrant on the rental vehicle returned 1,802.2 grams (approximately 4 pounds) of methamphetamine. Detectives then conducted a second search, pursuant to a search warrant, on Defendant's motorhome where a loaded, stolen Smith and Weston .357 revolver was found. That firearm was found under a round table. On the same table, detectives saw pill bottles, drug paraphernalia, and a scale. Detectives also found marijuana and peyote in the motorhome.

A grand jury indicted Defendant on one count of Possession with Intent to Distribute Methamphetamine on August 27, 2024. He pleaded guilty to that charge on November 19,

2024. The Presentence Report included an enhancement under § 2D1.1(b)(1) for the firearm. It did not include a reduction under § 5C1.2(a)(2) for the safety valve relief.

### III. ANAYLSIS

The burden and quantum of proof are different as between Sentencing Guideline § 2D1.1(b)(1) for the firearm enhancement and Guideline § 5C1.2(a)(2) for safety valve relief. *United States v. Nelson,* 222 F.3d 545, 550-51 (9th Cir. 2000). Section 2D1.1(b)(1) (the "firearm enhancement") applies "if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." *Id.* at 550 (cleaned up). Section 5C1.2 (the "safety-valve") applies if the Defendant shows that he did not possess the firearm in connection with the drug crime. *Id.* at 551 (cleaned up).

The burden of proof for the firearm enhancement is on the Government to show by a preponderance of the evidence that a weapon was present and connected with the offense. *Id.* (cleaned up). If the Government makes this initial showing, the burden shifts to the Defendant to show that it is clearly improbable that the weapon was connected to the crime.

The burden of proof for the safety valve is on the Defendant to show by a preponderance of the evidence that he did not possess a firearm in connection with the offense. *Id.* (cleaned up).

In *United States v. Alaniz,* 69 F.4th 1124 (9th Cir. 2023), the Ninth Circuit further explained the different burdens of proof for the two guidelines. It stated:

> Despite their seeming facial overlap, § 2D1.1(b)(1) and § 2D1.1(b)(18) require distinct inquires. *See Nelson*, 222 F.3d at 549–51. Under § 2D1.1(b)(1), the government simply bears the burden of proving that the weapon was possessed at the time of the offense. *See id.* at 551 n.3. The enhancement then applies unless the defendant can show it was "clearly improbable" that the weapon was possessed in

> connection with the offense. *See id.*; U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A). But to invoke the "safety valve" in § 2D1.1(b)(18), the defendant has a lower burden, and must only show by a preponderance that a dangerous weapon was not used in connection with the crime. *See Nelson*, 222 F.3d at 550.

Id. at 1126–27.[1] There, the Ninth Circuit affirmed the District Court's decision to apply both the two-level firearm enhancement and the two-level safety-valve reduction, which effectively cancelled out the two provisions.

### A. Firearm Enhancement

The firearm enhancement does not require the Defendant to physically possess the firearm at the scene of the crime. Instead, the Government initially needs only to prove that a firearm was possessed during a drug transaction. The burden then shifts to the Defendant to prove that the firearm was not connected to the crime.

Here, on June 24 or 25, 2024, a confidential informant ("CI") told law enforcement that Defendant was trafficking methamphetamine. The CI said the source of supply was in Mexico or New Mexico; that Defendant sent money via wire transfer from Blackfoot, Idaho, once a week; that about one hour after the wire transfer, Defendant would receive information regarding a drug pick-up location in Bingham County; that Defendant would take the drugs to his motorhome and distribute it to dealers and users in Bannock County.

On July 23, 2024, the CI purchased 28.16 grams of methamphetamine from Defendant at Defendant's motorhome. Before that purchase, the CI told police that the CI knew Defendant had a handgun in his motorhome.[2] There is no evidence that the CI saw

---

[1] Section 5C1.2 is the safety-valve under the Guidelines. However, § 2D1.1(b)(18) is the section that gives the two-level decrease if the safety-valve applies.
[2] Although the record suggests the handgun was in Defendant's "residence", the motorhome is the only residence he had.

MEMORANDUM DECISION AND ORDER - 4

the handgun at the time of the purchase of the 28.16 grams.

On July 25, 2024, Defendant was arrested after traveling to Utah and back. He was arrested while still in a rental car and before he arrived at his motorhome. The stop was made in Downey, Idaho. The motorhome was parked in Pocatello. The only firearm involved in this case was in his motorhome and was discovered by law enforcement after Defendant's arrest. The firearm was a .357 revolver loaded with six rounds. It was near two digital scales and 1.6 grams of marijuana. Thus, the firearm was not with Defendant when he was arrested.

In *United States v. Willard*, 919 F.2d 606 (9th Cir. 1990)[3], the Defendant was arrested in his car, which had cocaine and heroin in it. There were no weapons in the car. However, guns were later found in his place of business some miles distant. At sentencing, the Court invoked the firearm enhancement, and the Circuit affirmed. In affirming, the Circuit stated, "Our court has not required the guns and drugs to be found in proximity to each other, in order to support a firearm enhancement." *Id.* at 610.[4] Proximity is usually circumstantial evidence of possession of a firearm during commission of a drug offense. *United States v. Spoerlein,* 993 F.2d 886 (9th Cir. 1993). However, other evidence may support the same conclusion. *Id.*

Here, the evidence shows that Defendant had a handgun in his motorhome prior to

---

[3] Defendant claims that the rule stated in *Willard* only applies to conspiracy cases. However, there is no language in *Willard* that suggests that the Defendant was convicted of conspiracy rather than possession with intent to distribute.

[4] Defendant cites *United States v. Alaniz*, 69 F.4th 1124 (9th Cir. 2023). Although that case correctly sets out the differences in standards between the gun enhancement and the safety valve, it is a case addressing only the constitutionality of the gun enhancement which is not pertinent here.

MEMORANDUM DECISION AND ORDER - 5

this crime, that Defendant sold methamphetamine out of his motorhome, that Defendant was returning to his motorhome when arrested miles away from the motorhome; that the gun was in the motorhome at the time of arrest along with digital scales and drug paraphernalia. The facts also show that Defendant, a convicted felon, could not own a firearm and that the firearm had been stolen. Defendant cannot provide a legitimate reason for possessing the loaded gun. These facts are enough to show by a preponderance of evidence that Defendant possessed the firearm at the time of his arrest to assist him in dealing methamphetamine. The two-level enhancement under § 2D1.1(b)(1) for the firearm will be given.

### B. Safety Value Relief

A district court's determination of whether a defendant qualifies for safety-valve relief is a factual determination reviewed for clear error. *United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996). The law makes it clear that a defendant is not automatically ineligible for safety-valve relief simply because he received a firearm enhancement, and a district court errs if that is the sole basis for denial of the safety valve. *See, i.e., United States v. Medbery,* 835 F. App'x 927, 928 (9th Cir. 2021).

Defendant argues that he can receive the two-level downward adjustment under § 2D1.1(b)(18) and § 5C1.2(a)(2) and the removal of the mandatory minimum even if he receives the two-level enhancement under § 2D1.1(b)(1). This is technically correct. *See, United States v. Johnson,* 46 F.App'x 533, 533 (9th Cir. 2002)("The district court's statements at sentencing indicate that it erroneously believed that application of the firearm enhancement necessarily precluded eligibility for the safety valve."); *United States v.*

MEMORANDUM DECISION AND ORDER - 6

*Medbery,* 835 F.App'x 927 (9th Cir. 2021)("The district court erred in concluding that Defendant was ineligible for 18 U.S.C. § 3553(f)'s 'safety valve' because he had received U.S.S.G. § 2D1.1(b)(1)'s firearm enhancement."). The Defendant's standard for thwarting the weapon-possession enhancement is generally higher – clearly improbable – than it is for obtaining safety valve relief – preponderance of the evidence -- so it is possible to possess a firearm for purposes of the firearm enhancement but not "in connection with" a drug offense for purposes of safety valve relief. *See, United States v. Nelson,* 222 F.3d 545 (9th Cir. 2000).

The Government argues that Defendant possessed the firearm in connection with his offense. However, Defendant's offense was possession with intent to distribute the methamphetamine found in his car. As discussed above, Defendant possessed the firearm temporally proximate to his drug possession with intent to distribute. That meets the requirements for a firearm enhancement. Even so, there is no evidence that he possessed the firearm spatially proximate to his drug possession with intent to distribute. The methamphetamine was in his car. The gun was in his motorhome. This lack of spatially proximity infers he did not possess the firearm to assist with his crime of possession of drugs with intent to sell. On the other side of the equation, he had no lawful purpose for possessing the gun as a convicted felon. He gave no explanation as to why the gun was loaded and stashed near the digital scales. In fact, he gave no explanation at all as to why he possessed a gun as a convicted felon.

The circumstances in which the firearm was found, coupled with the implausibility of the defendant's explanation may serve as grounds for concluding that a firearm was

MEMORANDUM DECISION AND ORDER - 7

possessed in connection with the offense of conviction.[5] *United States v. Fernandez,* 526 F.3d 1247, 1252 (9th Cir. 2008). Here, Defendant has no plausible explanation for having the firearm. The firearm was found in a motorhome where Defendant sold drugs and, in a location, close to the digital scales and drug paraphernalia.

In *United States v. Dagesian,* 2025 WL 304321 (9th Cir. 2025)[6], the defendant pleaded guilty to possession with intent to distribute methamphetamine. At sentencing, the court refused to apply the safety valve despite defendant's argument that the firearms he possessed were not possessed in connection with the methamphetamine offense because he only intended to sell the firearms. The Ninth Circuit affirmed the refusal to apply the safety valve relief.

The relevant facts in this case applicable to the safety valve argument is the presence of a stolen, loaded firearm in the motorhome; the location of the firearm to the digital scales; the drug transaction with the CI occurring in the motorhome just a few days prior to the date of the arrest, defendant's status as a convicted felon (giving him no legal right to possess the firearm); the presence of drug paraphernalia near the firearm and scales; Jorden Petersen's statement that he visited Defendant's residence every other day and purchased methamphetamine there just the week prior to the arrest. The only plausible reason for the firearm was in connection with the drug offense. Defendant is not entitled to the safety valve.

---

[5] "Offense" means "the offense of conviction and all relevant conduct". *United States v. Miller,* 151 F.3d 957, 960 (9th Cir. 1998).
[6] This case is important because it is not a conspiracy case and yet held that the defendant could not qualify for safety valve relief despite his claim that the guns were not connected to his crime of possession of drugs with intent to sell.

Alternatively, in order to qualify for the two-level downward adjustment, the defendant, no later than the sentencing hearing, must truthfully provide to the Government all information and evidence he has concerning the offense. Failure to do so is an alternative ground for refusing safety valve relief. *United States v. Salazar,* 61 F.4th 723 (9th Cir. 2023). The Government argues that Defendant did not meet with the Government and provide all information. The Defendant agrees, claiming only that the case moved quickly. Pursuant to the Ninth Circuit's decision in *Salazar*, the Defendant's failure to provide all information at his disposal which is relevant to the offense defeats the application of the safety valve.

## V. CONCLUSION

Defendant's objection as to the two-level firearm enhancement is denied. The Government properly met its burden to prove that the Defendant possessed the firearm at the time of his arrest. The gun and drugs do not need to be found in spatial proximity to each other, to support a firearm enhancement. Temporal proximity is enough so long as there is other evidence to support a finding that the firearm was possessed in connection to the crime. That evidence exists here.

Defendant's request that he receive the safety valve relief is also denied. He has provided no plausible, legal purpose for possession of the stolen firearm. Additionally, he did not meet with the Government and share all that he had as required by the safety valve.

## VI. ORDER

1. The two-level enhancement for the firearm will be applied to determine the Guideline Sentencing Range. Defendant's objection is **DENIED**.

2. The Guideline safety valve, with its two-level reduction in the Offense Level and removal of the mandatory minimum in this case, will not be applied. Defendant's objection is **DENIED**.

DATED: February 25, 2025

David C. Nye  
Chief U.S. District Court Judge